## In re NESS.
### No. 2588.

Court of Customs and Patent Appeals.

Feb. 3, 1931.

Byrnes, Townsend & Brickenstein, of Washington, D. C. (C. H. Potter, of Washington, D. C., and Warren J. Willis and Eugene L. Greenewald, both of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant's claims in this case relate to improvements in back-flash arresters. They are seven in number and all were successively rejected by the examiner and by the Board of Appeals of the Patent Office. Appeal was then taken to this court.

It will be sufficient to quote Nos. 1, 3, and 7:

"1. A flash arrester comprising a casing adapted to be coupled in a gas supply line and containing a replaceable cartridge comprising finely divided, difficulty fusible, unbounded material of a size that will pass through screening of about 40 to 90 meshes to the inch."

"3. A back flash arrester comprising a casing adapted to be coupled in a gas supply line and containing a confined layer of finely divided unbonded alundum forming a porous high-temperature resistant wall between the outlet and the inlet of said casing."

"7. A flash arrester comprising an internally threaded tubular section having an internal shoulder, screen means bearing against said shoulder, a porous body of finely-divided refractory material disposed against said screen means and against the adjacent inside surface of said tubular section, and perforated means having external threads whereby it may be screwed into said section to hold said material in place and to exert various pressures thereon whereby its thickness and porosity may be varied."

The references cited in the decision of the Board of Appeals are:

Emerson et al., 802,380, October 24, 1905.
Ellis, 1,170,055, February 1, 1916.
Armstrong, 1,176,017, March 21, 1916.
Berry, 1,328,485, January 20, 1920.
Fregonara, 1,457,059, May 29, 1923.
Schroder, 1,497,197, June 10, 1924.
Harmer (Br.), 17,972, of 1913.
Thorpe, "Dictionary of Applied Chemistry," page 180 (1921).

Appellant, in his application, concedes the evolvement by others of devices designed for stopping the back-flash of flames from blowpipes, thus preventing explosion in acetylene gas tanks, but insists that he has succeeded in making improvements, inventive in their nature, over the prior art. His brief says:

"Appellant's principal achievements in the present invention are to provide an improved flash-back arrester which is reliable in its operation; which is adapted to be set for any one of a variety of gas pressures; which will not get out of order; which meets the rigid requirements of the Board of Fire Underwriters; and which is simple to construct and install.

"Appellant has discovered that an extremely efficient flash-back arrester is obtained by inserting in the gas conduit a layer of finely divided unbonded refractory material that is non-corrosible and infusible under all the operating conditions to which it is

subjected. The material which meets these requirements is finely divided unbonded alundum of a size that will pass through screening of from 40 to 90 meshes per inch."

The apparatus may be briefly described as an arrester comprising a casing having two end sections coupled by an intermediate internally threaded section which latter section contains a layer of granular material (defined in claim 3 as alundum), the material being unbonded, and confined at both sides by screens and disks, the disks being perforated and adjustably threaded into the intermediate section. It is specified that the alundum is of particles of a size which will permit their passage through screening of from 40 to 90 meshes to the inch. This material forms a porous high-temperature resistant wall between the outlet and the inlet of the casing.

In operation the gas from the tank or generator enters the arrester through a passage which leads it to the layer of alundum through which it flows, and by its passage therethrough it is subdivided. It then flows out through another passage to the supply line and gas burner, and the statement of the specification is that: "Any back flash that gets back into the arrester will be extinguished immediately before it passes therethrough because of the subdivision of the gas by the layer of finely divided material and the screens and perforated discs carrying it."

It appears evident that if appellant has produced a patentable invention, the primary or fundamental element of that invention lies in the disclosure of granular, unbonded alundum divided into particles of a "size that will pass through screening of about 40 to 90 meshes to the inch." The other elements of the claims are, in the main, constituent means by which the use of the alundum, in the form designated, is rendered practicable.

The patent to Ellis, supra, relates to a three-section explosion arrester, the middle section "charged with finely divided granular material of a refractory nature, preferably of poorly conducting material such as crushed fire-brick, clay, pumice, magnesia and the like, the fragments preferably being screened between 15 and 20 mesh or thereabout, so as to afford fairly uniform grains. These are placed in the cylinders in the layers. * * * Between the layers wire screens are placed to form spaces which are charged with copper or aluminium fragments, such as copper tacks or aluminium granules of say about 20 mesh. * * * * "

The patent to Armstrong discloses the use as a flame arrester in an oxygen and acetylene torch, of a "mass of porous and non-inflammable material b[7], such as asbestos or any other suitable substance." This material of Armstrong we understand to be unbonded.

The patent to Berry shows the use of a "porous cup or diaphragm 9 consisting of refractory material such as, for example, alundum which is porous enough to allow the passage of gas at ordinary pressure without materially impeding the flow. Any porous clay product will answer the requirements."

In Berry the cup or diaphragm is, as we understand it, a compacted article and not a mass comprised of unbonded granules. Within the cup are leaden pellets designed to be melted by the intense heat of the back flash when the porous cup itself is not sufficient fully to arrest the flame, and the metal "may be sufficient to stop the further passage of the flame by melting over and then sealing the top of the tank of metal shot or pellets," etc.

Fregonara discloses the use of "iron chips or any like permeable material," interposed in the spaces between certain discs; Schroder, "a sleeve i containing a porous fireproof protective disc k of magnesium oxide inserted gas-tight therein."

The British patent to Harmer states that the filtering material is preferably coke, and further says that patentee is aware that "it has already been proposed to employ porous ceramic material, graphite, metal gauze and sponge * * * with blowpipes generally," and he makes "no claim thereto."

It is thus to be seen that in none of the prior arts cited is use disclosed of unbonded granules of alundum, specifically named as alundum. The only use of alundum, specifically calling it by that name, is Berry who uses it in the form of a cup or diaphragm.

Aside from possibly the coke filter of the British patent, Ellis appears to be the only discloser of materials in granular form. He appears to have a layer of material such as "crushed fire-brick, clay, pumice, magnesia and the like" preferably "between 15 and 20 mesh or thereabout," and another layer of "copper tacks or aluminium granules of say about 20 mesh." The exact form of Armstrong's asbestos material is not disclosed.

Appellant's claim 3, supra, is the only one of his claims which specifically names alundum as the high-temperature resistant, and it is there described as "finely divided, unbonded." His claim 1 is the only claim

which attempts to define the size of the material, it being there described as "of a size that will pass through screening of about 40 to 90 meshes to the inch."

It does not seem to us that claim 1, standing alone, is patentable over the disclosures in the prior art, unless it be so held by reason of the defining of the sizes of the granules into which the resistant material is divided— 40 to 90 meshes. Claim 3, standing alone, would not be patentable unless there be held to be invention in substituting alundum in unbonded form (the granular unbonded form being taught by Ellis as to other materials) for the compact alundum cup or diaphragm of Berry.

Claim 7 does not present any matter relating to the material which differentiates it from either Nos. 1 or 3, nor do claims 2, 4, or 6.

The prior art teaches the use of materials in granular form, as a *form* adapted to make a successful resistant. It teaches the use of porous alundum as a satisfactory resistant *material*. To put the material with its already disclosed and known attributes into a form or forms also already disclosed and known appears to be rather a matter of mechanical skill than one of invention. It is true that the particular sizes—40 to 90 mesh granules—claimed by appellant are not specifically disclosed in the prior art, but the very fact that so wide a variance in size is allowed himself by claimant strongly indicates that size is not of the essence of the matter but is a factor likewise merely within the power of determination by those skilled in the art. In re Iwan, 17 App. D. C. 566.

In In re Williams, 36 F.(2d) 436, 438, 17 C. C. P. A. 718, 722, we said:

"There is no invention in changing the size and proportion of a device or machine so long as the construction and mode of operation remain the same."

Numerous authorities were there cited.

Under the view of the case as to the nonpatentability of the alundum feature, there appears to be no necessity of analyzing the other and more truly mechanical elements. Suffice it to say that the modifications of the mechanical prior art disclosed in the references do not appear to reach the plane of inventiveness.

We think it is well settled that there is no patentable invention in selecting and assembling parts of prior mechanisms used in the same art where the result produced is nothing more (though it may be better) than

the sum of the results due the individual elements. In re Bayer, 35 F.(2d) 66, 17 C. C. P. A. 614, 390 O. G. 4; In re Appelburg & Gilliver, 37 F.(2d) 620, 17 C. C. P. A. 820, 394 O. G. 7.

We find no error in the decision of the Board of Patent Appeals, and the same is affirmed.

Affirmed.